UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **LARRY JONES** | **CIVIL ACTION NO. 19-849-P** |
| **VERSUS** | **CHIEF JUDGE HICKS** |
| **JERRY GOODWIN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

**REPORT AND RECOMMENDATION**

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

**STATEMENT OF CLAIM**

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Larry Jones ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was filed in this court on June 27, 2019. Plaintiff is currently incarcerated at the Elayn Hunt Correctional Center, but claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names Jerry Goodwin, Robert Rachal, Michele Norris, Jeffrey Fuller, James LeBlanc, Joel Williams, Paula Milwee, Charlie Phillips, and Nurse Jeff as defendants.

Plaintiff claims that while incarcerated at the Louisiana State Penitentiary in 2015, he was diagnosed with a permanent degenerative disorder of his cervical spine vertebrae which caused joint and nerve pain. He claims that on December 9, 2015, Dr. Park told him that he would eventually need surgery to prevent paralysis if his condition worsened. He claims Dr. Park referred him to Dr. Comeaux, a neuralgic

specialist, for further evaluation and treatment. He claims Dr. Park and Dr. Comeaux increased his pain medication and therapy to manage his neurological symptoms until he had to have surgery.

Plaintiff claims that in 2016, he experienced right flank stomach pains, continuous hemorrhoidal bleeding, fatigue, weakness, shortness of breath, dizziness, and rapid heart rate. He claims blood tests were performed in September of 2016 and January of 2017, and he was diagnosed with anemia.

Plaintiff claims that on February 22, 2017, he was prescribed vitamin supplements including iron, vitamin C, and vitamin D and advised by the doctor to take his vitamin supplements to correct and manage his potentially life-threatening symptoms which caused hemoglobin deficiencies in his blood cell count. He claims he was also advised that his condition needed to be monitored by periodic blood tests. He claims he was also prescribed Prilosec. Plaintiff claims that on March 9, 2017, he underwent gastrointestinal testing. He claims he was diagnosed with hemorrhoids, diverticulosis, and a hiatal hernia. He claims that on April 5, 2017, he was prescribed Prilosec for his stomach symptoms. He claims that on November 10, 2017, he was prescribed fiber tablets and hemorrhoid cream for his bowel disturbances and rectal bleeding.

Plaintiff claims that while incarcerated at the Louisiana State Penitentiary from 2015 to 2017, he was prescribed medication and received extensive medical care including testing and neurological pain management therapy.

Plaintiff claims that at his transfer intake screening on November 28, 2017, Nurse Michele Norris explained communicable disease prevention to him and a large group of prisoners. He claims Norris never physically examined him. Plaintiff claims that during intake, Nurse Norris discontinued his Baclofen and iron supplement. He claims Nurse Norris also rewrote the prescription order dates for his Vitamin C, Vitamin D, Singulair, Prilosec and fiber tablets to expire several months earlier than originally prescribed prior to his transfer. He claims Nurse Norris acted according to a common unwritten policy and practice at DWCC and discontinued and/or limited costly and sedative type medicines. He claims the actions of Nurse Norris caused his medical conditions to deteriorate.

Plaintiff claims that for months he made repeated sick call complaints to Officer Joel Williams, Nurse Phillips, and Nurse Jeff during their routine medical rounds. He claims he told them that his condition was worsening and that he had shocking nerve and joint pain in his neck and lower back, temporary numbness and tingling in his arms and legs, difficulty walking and bending, constant neck pain and headaches, fatigue, weakness, dizziness, shortness of breath, right flank stomach pain, and continuous loss of blood during bowel movements. He claims he was repeatedly charged medical co-payments even though he was never referred to a doctor or examined by a doctor. He claims he wrote letters to Paula Milwee, the nursing director, which she ignored. He claims he also wrote letters to Assistant Warden Robert Rachel about the denial of medical treatment and his deteriorating condition.

Plaintiff claims that on December 6, 2017, he made a healthcare complaint about neck and back pain and the discontinuation of his pain medication. He claims he was seen by Dr. Fuller. He claims he told Dr. Fuller that he was in constant, increasing bone and nerve pain caused by his degenerative disorder. He claims he also told him that his condition was being aggravated by his new living conditions including the concrete bed slab foundation. He claims he told Dr. Fuller that his pain medication and vitamin supplements were discontinued upon his arrival at David Wade Correctional Center.

Plaintiff claims Dr. Fuller told him that strong pain medication like Baclofen was not permitted at David Wade Correctional Center. He claims Dr. Fuller also told him that the large volume of vitamin supplements prescribed to him were an unnecessary financial cost because his last blood test taken at the Louisiana State Penitentiary showed that his blood count had improved and was stable. He claims Dr. Fuller told him that he was temporarily substituting his former pain medication with Mobic.

Plaintiff claims he told Dr. Fuller that in the past, Mobic aggravated his stomach and would likely make his current stomach problems worse. He claims he also told Dr. Fuller that his former physician stated that he needed to be on the supplements to keep his blood count levels from dropping and putting him at risk of a heart attack or stroke. Plaintiff claims Dr. Fuller's decisions appeared to rest on his non-medical administrative outlook.

Plaintiff claims that on December 15, 2017, he was seen by Dr. Fuller. He claims Dr. Fuller refused to renew his pain medication Baclofen or allow him to continue receiving

neurological injections from pain management specialist Dr. Comeaux to treat his degenerative condition. He claims Dr. Fuller also refused to renew his fiber tablets and hemorrhoid cream that had expired or his iron tablets that were discontinued during his intake screening. He claims Dr. Fuller failed to renew and/or continue his Vitamins C and Vitamin D supplements that were set to expire on December 29, 2017. He claims Dr. Fuller deprived him of his continuing course of recommended treatment for his chronic degenerative disorder, hemorrhoids, rectal bleeding, and anemia. He claims Dr. Fuller acted in accord with a common unwritten policy and practice implemented to prevent and/or limit medical expenses and certain sedative medications from being dispensed to the general prison population at DWCC. He claims his hemorrhoidal bleeding and anemia worsened and his degenerative condition worsened.

Plaintiff claims that on January 10, 2018, EMT Paramedic Joel Williams denied him medical treatment after he made a sick call complaint for chronic neck and lower back nerve pain and joint stiffness, right flank abdomen pain, and excessive rectal bleeding from hemorrhoids. He claims Williams told him to take over the counter Tylenol for his joint and nerve pain. He claims he told Williams that Tylenol was ineffective. Plaintiff claims Williams failed to address his right flank abdomen pain and rectal bleeding. He claims that at this time he was taking Prilosec for acid reflux and heartburn and Carbamazepine and Mobic for his degenerative condition. He claims he was not receiving treatment for his rectal bleeding. Plaintiff claims that because of the lack of treatment for his rectal bleeding, he was anemic. He also claims he was denied further testing for his right flank abdomen

pain and degenerative spinal condition. He claims he was therefore subjected to unnecessary harm and pain.

Plaintiff claims that on January 25, 2018, Nurse Phillips denied him medical treatment and testing after he made a sick call request. He claims he had ongoing right flank pain, excessive hemorrhoidal bleeding, and chronic neck and lower back nerve and joint pain related to his degenerative condition. He claims he was also denied testing for hepatitis. He claims Nurse Phillips did not prescribe treatment or recommend testing. Plaintiff admits he was taking Prilosec and Carbamazepine, but complains he was not receiving treatment for hemorrhoidal bleeding.

Plaintiff claims that on January 26, 2018 and February 15, 2018, Nurse Jeff denied him medical treatment after he made sick calls complaining of chronic degenerative joint and nerve pain. He also requested hepatitis testing and to see a pain management specialist. He claims Nurse Jeff failed to prescribe him new treatment or order testing. He claims Nurse Jeff recommended that he continue taking ineffective treatment and medication for his worsening joint and neurological pain and symptoms. Plaintiff claims that at this time he was taking Carbamazepine which was ineffective without Baclofen and pain management neurological injections.

Plaintiff claims that on March 2, 2018, EMT Officer Williams denied him medical treatment after he made a sick call for chronic shocking nerve sensations in his neck, back, arms, and fingers. He claims the sensations were more frequent with neck and body movements. He claims he also had tingling in his limbs and digits when sitting and lying down in certain positions. He claims Officer Williams recommended that he take over the

counter Tylenol but did not physically examine him or prescribe medication specific to treating his neurological pain and symptoms. Plaintiff claims he was taking Carbamazepine which was not effective in treating his conditions without Baclofen and pain management nerve injections.

Plaintiff claims that on March 9, 2018, Nurse Jeff denied him medical treatment after he made a sick call for stomach pain, fatigue, nausea, and blurred vision. He claims he also requested hepatitis testing. He claims Nurse Jeff failed to refer him for testing of his symptoms or provide him treatment for his symptoms.

Plaintiff claims that in February or March of 2018, his prescription medications ran out and were not reordered even though he made repeated healthcare complaints regarding his deteriorating health problems.

Plaintiff claims that on April 10, 2018, he made a sick call requesting a renewal of his prescription for Carbamazepine which had expired on March 28, 2018. This is the medication prescribed to treat his joint and neurological pain and symptoms. He claims Nurse Cuptzin denied his request but told him that she would refer his request to Dr. Fuller for further review.

Plaintiff claims Dr. Fuller denied his request to renew his prescription for Carbamazepine but did renew his prescription for the anti-inflammatory medication Mobic. He claims it was known that Mobic caused him severe acid reflux/heartburn and intestinal bleeding and blood coagulation dysfunction. He claims Dr. Fuller continued to prescribe ineffective medication that he knew was highly likely to cause his stomach

problems and hemorrhoid rectal bleeding worse. He claims that Dr. Fuller's refusal to renew his Carbamazepine prescription followed the obvious pattern of discontinuing his treatments to lower medical expenses regardless of serious medical need.

Plaintiff claims that on June 12, 2018, he made a sick call complaint because of chronic nerve pain and symptoms. He also requested that his Mobic prescription be renewed because it had expired on June 10, 2018. He claims Nurse Phillips saw him and referred his complaint and request to the medical director. He claims that she did not prescribe different medication or renew the Mobic prescription even though he told her that the Mobic caused acid reflux and the Tylenol did not help.

Plaintiff claims that on June 25, 2018, he made a sick call for his chronic neurological symptoms and renewal of his Mobic prescription. He was seen by EMT Officer Williams who referred his complaint and request to the medical director. He claims Williams did not physically examine him or provide treatment. He claims the last time he received treatment was on June 10, 2018.

Plaintiff claims that on July 5, 2018, he was seen by Dr. Fuller. He claims Dr. Fuller was visibly upset with him and told him that his situation was not going to improve by writing to Assistant Warden Rachel. He claims Dr. Fuller told him the only thing he could do for him was order another MRI test and possibly schedule him for surgery. Plaintiff claims he tried to explain to Dr. Fuller that he was in constant, severe pain and had difficulty with mobility, fatigue, dizziness, and bleeding. He claims Dr. Fuller told him that he would order medication for him, but nothing was prescribed for him. He claims

Dr. Fuller denied him any form of medical treatment because he wrote a letter to Assistant Warden Rachel on July 2, 2018 complaining about erroneous medical co-payment fees and being denied medical care.

Plaintiff claims that on July 20, 2018, he made a sick call complaint for ongoing right flank pain, severe heartburn, excessive rectal bleeding during bowel movements, and chronic joint and neurological pain. He was seen by EMT Officer Williams who made note of his complaint but did not physically examine him or provide treatment. Plaintiff claims it had been more than a month since he had received treatment for his health problems.

Plaintiff claims that on August 7, 2018, he made a sick call complaint for right flank pain, severe heartburn, bloating, nausea, and blood loss. He also requested to be tested for the cause of his symptoms. He was seen by EMT Officer Joel Williams at his cell during medical rounds. He claims Williams made note of his complaint but did not physically examine him or provide immediate treatment.

Plaintiff claims that on August 8, 2018, he made an emergency healthcare complaint because he had severe stomach pain and was vomiting blood. He claims he was dizzy and nauseated. He claims EMT Officer Williams gave him two aspirin and a cup of water. He claims that after 30 minutes he was sent to his cell still in extreme pain. He claims he suffered in silence and prayed for the pain to subside. Plaintiff admits he was referred for a follow up examination.

Plaintiff claims that on August 16, 2018, he was finally sent to LSU-Monroe for testing and evaluation. He claims that while he underwent follow-up tests, he was not treated for his symptoms of anemia and his degenerative disorder. He admits he was placed on Protonix and Carafate for his stomach symptoms.

Plaintiff claims he continued to make sick call complaints for chronic neurological pain, rectal bleeding, dizziness, shortness of breath, fatigue and weakness while traveling back and forth to University Health Monroe for follow up testing.

On October 31, 2018, Plaintiff was transported to University Health Hospital in Monroe for colonoscopy testing. He informed the nurse that his heart rate was fast, and he felt fatigued, short of breath and dizzy. After talking to a doctor, the nurse took his blood. Plaintiff claims his colonoscopy test was cancelled because he had to be admitted for an emergency blood transfusion. He claims he was informed that he was anemic from chronic blood loss. Plaintiff claims that he was placed on iron to balance his blood count. Plaintiff was discharged from the hospital on November 2, 2018 after receiving three units of blood. The colonoscopy test was performed, and it was negative for intestinal bleeding.

Plaintiff claims the staff at David Wade Correctional Center delayed treatment, medications, testing, chronic care, and surgery that was recommended by outside doctors. He claims he did not receive testing for his back and right flank pain.

Plaintiff claims he was repeatedly charged for referrals while under the care for his initial complaint and charged for prescriptions and renewals for chronic conditions.

Accordingly, Plaintiff seeks injunctive and declaratory relief, monetary compensation, and punitive damages.

## LAW AND ANALYSIS

**Medical Claims**

Plaintiff claims he has received inadequate medical treatment for his numerous medical conditions. He filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. In addition,

disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits that he filed numerous sick call requests and was seen by the medical staff. He also admits that he was prescribed medications and testing for his medical conditions. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff disagrees with the treatment Defendants provided him. He complains that Defendants discontinued his previously prescribed medications, including his pain medication, and supplements. He also complains he was not allowed to continue receiving neurological injections from a pain management specialist. He also disagrees with the medications Defendants prescribed for him. He claims he should have undergone more testing to determine the cause of his symptoms. Plaintiff complains Defendants delayed treatment, medications, testing, chronic care, and surgery that were recommended by

outside doctors. This is a disagreement with treatment, which does not support a claim of deliberate indifference.

Plaintiff is not entitled to receive the medications or course of treatment prescribed by his personal physician or a physician at another facility. The law is clear that a prison doctor's disagreement with, or failure to follow an outside physician's treatment plan or recommendation does not amount to deliberate indifference. See Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir.1999) (The failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference.); Clifford v. Doe, 303 Fed.Appx. 174, 2008 WL 5210663 (5th Cir.2008) (fact that medical staff at the prison did not follow the treatment plan recommended by an outside physician did not amount to deliberate indifference). As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v.

Foti, 958 F.2d. 91 (5th Cir. 1992). Accordingly, Plaintiff's medical claims should be dismissed with prejudice as frivolous.

**Medical Fees**

Plaintiff claims he was repeatedly charged medical copayments even though he was not referred to a doctor or examined by a doctor. He also claims he was repeatedly charged for referrals while under the care for his initial complaint. He claims he was charged for prescriptions and renewals for chronic conditions.

Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996) (citations omitted). Furthermore, Plaintiff does not allege that he was denied medical treatment because he could not pay the fee. Accordingly, Plaintiff's medical fee claims should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See <u>Douglas v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 25th day of October 2021.



Mark L. Hornsby
U.S. Magistrate Judge